Case number 22-1722, Sharon Michaels, Avalanche v. NCO Financial Systems Inc, et al. Ms. Dennis for the Avalanche, Mr. Olmert for the Appalachian NCO and TSI, Ms. Burnett for the Appalachian Rubinstein. Good morning, Ms. Dennis. Good morning, Your Honors. May it please the Court, I would like to reserve four minutes of my time for rebuttal. Your Honors, the District Court's decision below, there are several reasons for reversal of the District Court decision below. But they all boil down to a misapplication of the summary judgment standard. In this case, looking at the facts, it's clear that Ms. Michaels presented to the District Court below sufficient evidence to withstand summary judgment. However, the evidence contradicting defendant's false narrative was deliberately ignored. Prima facie proven claims were disregarded and critical disputed facts and uncontroverted facts were resolved in the light most damaging to Ms. Michaels or disappeared altogether. The District Court's primary reason for granting summary judgment is that basically the Court says that Ms. Michaels failed to support her defenses with proper citations to the record. Ms. Michaels' briefing below clearly shows that Ms. Michaels provided over 200 citations to record evidence in her briefing. Not only that, defendant's statements of fact also confirm the fact that Ms. Michaels did actually support her positions with citations to the record. Let me just focus on a couple of those that might be helpful. So for the FDCPA claim, which the District Judge found was not timely, can you tell us what are the events that happened after June 27, 2015? In other words, the year before the filing of the complaint that give rise to an FDCPA violation? Well, there are many. For one, the parties actually engaged in mediation where Transworld, one of the defendants, was still trying to collect the debt during the mediation. And that happened, I believe, on October 20, 2015. Defendants also, up until dismissal, initially tried to dismiss without prejudice, hoping to actually go back, come back for a second opportunity to sue Ms. Michaels again. Whereas Ms. Michaels rejected that request to dismiss without prejudice. And instead, defendants came back again and then decided to dismiss with prejudice. Are you suggesting that simply maintaining a debt collection proceeding is a continuing violation of the FDCPA? Well, I'm suggesting that defendants did complete several acts after the court asked whether or not... But those acts were all part of their debt collection proceedings. And a number of circuits have rejected the idea that simply maintaining a debt collection proceeding is a continuing violation of the FDCPA. Well, in this circuit, the court has said that involving a litigation, and I believe it was the case of Jung, where the court considered an ongoing litigation to be a continuing violation. Which case is that? Jung v. Jose. Mundy, Jung v. Mundy? Yes. Is that the case you're relying on? Yes, I am. Where the court said the actual, the actual tortuous continuation of a lawsuit actually does not, the violation doesn't accrue until after the disposition of the case. Is that an FDCPA case? No, it's not. It's involving, but it's involving litigation. It's involving an attorney, I believe in a malpractice, I believe it was a malpractice situation where the court decided, it involved an ongoing litigation. The court decided that the continued, the continuing of the litigation actually constituted a continuing violation, tortuous violation under D.C. law. I believe, I apologize, we'll have the... That seems like a more general principle, though, than whether such litigation would be a continuing violation under the FDCPA itself. Well, if the court distinguishes between the FDCPA and a general continuing violation, then that, you know... Well, several circuits have done so. Well, in this case, though, Ms. Michaels actually argues that the defendant's role in the actual litigation was actually concealed. She's also asking, requesting, holding under the concealment, equitable concealment doctrine as well, whereas she was not aware of any of the defendant's role in the actual litigation. So relying on a discovery rule for that? Not necessarily a discovery rule, but more fraudulent concealment of activities by the defendants who did not disclose their role in the actual collection litigation to Ms. Michaels while the litigation was going on. Right, so it's fraudulent concealment that holds the limitations, is the theory. But for that to apply, there's a requirement of an affirmative misrepresentation by the defendants to prevent the discovery. And what is the affirmative misrepresentation alleged here that prevented Michaels from discovering the wrongdoing? Well, they filed a suit in the wrongdoing of defendants. Affirmative misrepresentation that put her off the trail that made it so that she wouldn't have any reason to think that there was wrongdoing. Well, they filed suit in the name of National Collegiate instead of their own name when they were actually prosecutors of the actual lawsuit in the collection action. So Ms. Michaels had no idea that they were the actual ones that were prosecuting the suit. And she was defending based on the fact that they had named National Collegiate and not Transworld and MRA as the actual prosecutors of the actual suit. National Collegiate had no involvement in the actual collection action at all. There was no communication from Transworld to National Collegiate, nor was there any communication between the law firm Rubenstein and National Collegiate. National Collegiate had no idea, the alleged creditor had no idea about anything that was going on in the actual lawsuit. So Ms. Michaels had no idea that defendants were actually steering and prolonging the suit. Ms. Michaels relied on the actual pleading in the actual collection suit which states that National Collegiate is suing you for this amount of money, not Transworld and MRA. But with respect to that, her – and that is the reason why – I'm sorry, John. Sorry, I'm not sure I follow that. National Collegiate owned the law, right? Well, it is – the case below was dismissed with prejudice because there is no – National Collegiate or defendants could not prove that National Collegiate owned the loan or that there was a valid loan to be sued upon. The agreement that actually – that they presented below is not an enforceable agreement. It's an agreement made of – a makeshift agreement, DIY agreement that was produced primarily for litigation. And it was provided to the trial court. I'm sorry, what, DIY? DIY, do-it-yourself, do-it-yourself agreement. They basically put several pages of the agreement together to make up a single agreement when it's actually not the actual agreement. And they've admitted to this in their – in the actual – in the Statements of Issues and Dispute as well. So with respect to – there is no enforceable agreement in the record at all. With respect – so the court dismissed – oh, I'm sorry, the court granted Ms. Michaels – sorry, denied defendants' motion for summary judgment in the collection action because, for one thing, they couldn't prove an agreement because that is what Ms. Michaels argued – well, National Collegiate could not prove an agreement, which is what – which is one of the defenses Ms. Michaels raised to the court in the collection action. And the district court held that you don't have evidence or allegations of a willful violation of the DC – DCL? Yes. What's the single best piece of evidence that you have that the defendant's conduct was willful? The retainer agreement where they brought – where they agreed to bring lawsuits in the names of absent creditors without disclosing that information to the actual debtors. Obviously, Ms. Michaels could have raised different defenses below had she known that it was Trans World that was bringing the lawsuit rather than National Collegiate. And defendants never disclosed that to Ms. Michaels. But the fact that they actually have – there's an assigned, executed retainer agreement between the defendants where they actually agree to bring names and to – and bring lawsuits in the name of absent creditors is a – signed is a executed willful statement that we know what we are doing, which is what all DC – all DC law requires. DC law basically is that the only – what constitutes willfulness is essentially – is something that is inadvertent or not an accident. There's no – there's no evidence, no affidavits or anything in the record that the district court actually relied on Baylor. And Baylor, via Rubenstein, there was an actual – there was an actual affidavit. Rubenstein filed an affidavit in the record showing that – stating that he – that his actions were not willful. They were inadvertent. Here there's no affidavit – there's no evidence in the record, no affidavit in the record saying that the defendant's conduct below was actually inadvertent or accident. And it can't be because they signed a retainer specifically saying we agree to bring lawsuits in the name of creditors who are, you know, who are not participating in the lawsuit. There's a signed retainer agreement in the records of them executing – that both of them executed where they actually agreed to do that. So there's no way to deny the – that these – that they actually – the conduct is actually willful, especially given the very low standard in the D.C. – in D.C. Under D.C. law, which states – which states only that it needs to be not, you know – it needs to be either inadvertent or accident, which neither of them could do. So, sorry, your theory is that NCO should have brought the suit in its own name? Well, they should at the very least – no, NCO actually brought the – Transworld should have – NCO Transworld should have been the named plaintiff? No, Transworld actually prosecuted the suit. And Transworld – neither Transworld nor Rubenstein are the real party in interest, although they are the ones who actually prosecuted the suit. They brought the suit in the name of National Collegiate, just like they bring suits in the name of Capital One. Which would be perfect – I mean, perfectly obvious if National Collegiate owned the loan. I know you dispute that, but NCO is a servicer, subservicer, right? They help people who own loans blackmail them. That's obviously – that's in dispute. The defendants have not proven what their role is – what their position is with NCO. However, they never disclosed any of this to Ms. Michaels. And the real – neither of them, NCO and Rubenstein, are debt collectors. Neither of them are the real party in interest in the collection suit. But both of them brought – filed the suit in the name of National Collegiate when neither had an interest in the actual debt they were seeking to collect in the suit. And as I said, they never disclosed that to Ms. Michaels. And there's a specific – if I could just make one point. With respect to the DCL, there's a specific law that says that you cannot collect a debt in a name other than your true name. The DCL actually says that. So them bringing this lawsuit in the name of National Collegiate and not their own name when they are the sole prosecutors of the actual suit is a violation of the District of Columbia law. And they agreed to do that for several different creditors in the actual retainer agreements, in both the Dominion retainer agreement where – and also the Rubenstein retainer agreement. Both of which are in the evidentiary record and both of which TransWorld admits to actually hiring and retaining and violation – in unauthorized – engaging in the unauthorized practice of the law by hiring attorneys to actually bring these lawsuits. Suppose one entity owns a loan. I'm just asking you a legal question here, divorced from the facts of your case. One entity owns a loan. A second entity services that loan. They're retained to provide administrative support to collect and such. And the third entity is hired as a law firm to prosecute a collection action. Who's the proper plaintiff? The name of the plaintiff has got to be the party that owns the loan. The proper plaintiff is the party who has an interest in the lawsuit. J.H. Marshall says that debt collectors, like defendants, cannot bring lawsuits in the name of creditors and to litigate lawsuits in the name of creditors without engaging in the unauthorized practice of law. Well, there's several precedent, and also in banks. Banks, as far as a CPA violation, says that the unauthorized practice of law – Banks v. District of Columbia – says that the unauthorized practice of law is also a CPPA violation, which also differentiates that from Baylor v. Rubenstein as well. They're completely different facts. But the actual – the person who actually holds interest – I mean, the rules are clear with respect to who can bring lawsuits. And that is the person who holds an interest in the actual dispute, who actually has a legal interest in the actual dispute. So that would be the creditor. That would be the creditor. And the creditor hires a servicer in a law firm, in Judge Katz's example. And so it would have to be in the name of the person who owns the loan. And by the lawyers, and then you're saying, but to the extent that the loan servicer is involved, either they're not the real party in interest and or they're not a lawyer and can't practice law. Well, defendants are soliciting or selling legal services, basically. They're soliciting claims from creditors in direct violation of J.H. Marshall, D.C. law, and saying, look, we'll litigate your claim for you. Or we'll arrange for someone who's barred to do it. Which is also a violation of J.H. Marshall as well. Yeah, so we'll hire attorneys, which is also an unauthorized practice of law under Rule 49. You can't retain attorneys to actually do what you cannot do yourself. But that's also a violation and violation of the CPA because it's engaging in the unauthorized practice of law as well. So with respect to both. Thank you. Thank you. Miss Dennis, we'll give you a minute. Thank you. Morning, Mr. Altman. Good morning, Your Honors. Please score. My name is Michael Altman. I'm here on behalf of NCO Financial and Transworld Systems. Two minutes is going to be reserved for Lauren Burnett, counsel for Mitchell Rubenstein. There's a lot going on in this case, a lot of briefing, a lot of record. But I want to get to the main issue that has been flushed out for Your Honors. And that is this argument that she is making that somehow the defendants in this case were acting as de facto plaintiffs in the underlying collection lawsuit. That is simply not true. What about the related claim that they are engaged in the unauthorized practice of law under J.H. Marshall? If they're not the client, are they the lawyer? What are they? So Transworld Systems prior to Transworld NCO was the subservicer, as Judge Bassett correctly pointed out, is the subservicer of National Collegiate Trust. National Collegiate Trust does not have any employees. They work through their subservicers. Bradley Luke testified extensively to this in his deposition. And we also, in the record, there are multiple additions, I'm sorry, multiple amendments of the default prevention agreement by which the trust engaged NCO and later Transworld to be a subservicer. The retainer agreement that was referred to between NCO and Rubenstein explicitly states that the creditor is the client. That NCO is the agent of the client and is engaging the law firm on behalf of and to represent the creditor. And the record evidence is clear that NCO and Transworld were acting as a subservicer. The J.H. Marshall case deals with an antiquated practice, which does not exist anymore and has not existed for decades, where a debt collector would actually take an assignment of a debt, file suit in its own name, and go before the court in a pro-safe fashion to collect a debt. And so that is what the court chastised in J.H. Marshall, which I think is maybe from the early 70s, early 80s. And in Banks, likewise, you had a non-lawyer practicing law for a court. NCO and Transworld Systems engaged Mitchell Rubenstein, a real law firm, to act as counsel for National Collegiate. NCO and Transworld Systems, unlike J.H. Marshall, never stood before a court, made any filings before a court, either on their own behalf or as National Collegiate Student Loan Trust. The owner of the loan in the underlying collection lawsuit was National Collegiate Trust. The record evidence makes clear that there was an assignment from Chase Bank to National Collegiate Trust, and Mitchell Rubenstein and Associates was their lawyer. It's not very complicated, though Plaintiff has attempted to make this a very complicated issue. But at the end of the day, the heart of the argument that Plaintiff is presenting to the court is simply untrue. There was no masquerading by the defendants as the real party of interest. The real party of interest was National Collegiate Trust. In terms of the merits of the underlying litigation that Michaels is challenging in the Superior Court, why was the claim against Michaels timely? Timely? Why was it not time barred by statute of limitations? Because, Your Honor, there were payments made into 2012, which was presented both with record evidence of payments as well as a supporting affidavit in the lower court. Therefore, it was timely. I believe there were questions posed to Ms. Michaels in her deposition to identify exactly when all of her payments were made. There was a discovery issued to her to identify when all payments were made, and the response was non-responsive. So the only record evidence is that there were payments made into 2012. But I also advise the court that any claims relating to that are time barred because the lawsuit was filed over a year prior to the instigation of this lawsuit. Sorry, which FDCPA claims are timely? Maybe I misheard you. I'm sorry. None of the plaintiff's claims under the FDCPA are timely because there were no discrete acts by any of the defendants within one year prior to the filing. So let me ask you just about one discrete act, which was the letter that Dominion sent, the collection letter that Dominion sent late June 2015. That's in the limitations period. They're not before us, but I'm wondering why isn't there at least a plausible basis for attributing Dominion, that act by Dominion, at least to TSI, which retained Dominion as a contract. It's on behalf of the client which owns the loan, but TSI retains the ability to control Dominion and due pleadings and things of that nature. So it looks a little bit like Dominion is the agent of TSI as well as the agent of the party that owns the loan. Your Honor, the Fair Debt Collection Practices applies to acts of a debt collector. And Dominion, you're correct that Dominion here is the debt collector that issued that letter. Dominion is an independent contractor. The contract, the retainer agreement makes that clear that they are an independent contractor. They are responsible for following all applicable laws, including the Fair Debt Collection Practices Act. If the plaintiff believed that Trans World was somehow responsible for that, there is not a per se liability that would attach to a creditor. A creditor typically is not subject to the Fair Debt Collection Practices Act, only a debt collector. There's a clause in the retainer agreement that says TDM reserves the right to review any written communication you, a law firm, deem appropriate to send a debtor. They may reserve the right, Your Honor, but that does not give them control over Dominion. The plaintiff will have to show more by way of actual control over Dominion. They simply have not presented any evidence whatsoever that Trans World exerted that type of control over Dominion. Control to show an agency relationship? And establish vicarious liability. Which you don't think, and that wouldn't, why wouldn't that arise by operation of the retention agreement? I think the agreement, the plaintiff would have to show that there was something beyond the agreement where in practice there was actual control exercised over that letter. I would also like to add, too, that the complaint does not even allege vicarious liability. These are knee-jerk allegations without any support. There's no vicarious liability alleged against Trans World, nor is there any supporting document. Just again, on the timeliness of the underlying suit against Michaels and the Superior Court, why is the last payment, the date triggering the statute of limitations, do you have any support for that? Statutory support. That her payment was the date from which the limitations were triggered. I don't have it in front of me, Your Honor, but typically a statute of limitations is renewed by an expression that one owes a debt. And that is typically accomplished by a payment. There's an acknowledgment of the debt. But again, it's our position, too, that that claim is time-barred as there was no demand for payment made within one year of the prior, prior to the filing of the suit. And I have one question that's sort of the inverse of what, of the agency questions that Judge Cassidy was asking, which is we have an affidavit asserting personal knowledge regarding Michaels' loan and the chain of assignments. It seems that the declarant was familiar with NCO and TSI's record-keeping, but not necessarily J.P. Morgan's practices. How can we credit that personal knowledge in that declaration? Well, again, this would go to the lengthy transcript of Bradley Luke's deposition where he testified as to the trading of personal knowledge with First Marblehead, who was the servicer of the trust. Again, these are assignment documents for which they are custodians of record. And so the personal knowledge of the documents is related to understanding the chain of assignment. But NCO and TransWorld were not only the servicers, but also the custodian of record for which there was requisite trading so that they understood that chain of title, that this was a custodian of record for sending documents. All right. And I gather we're going to hear briefly from Ms. Burnett. Thank you, Mr. Haldane. Thank you very much. Sorry about that. Good morning. May it please the court. My name is Lauren Burnett. I represent Mitchell Rubenstein & Associates. And I'm thrilled that you asked questions about the statute of limitations underlying with regard to the collection suit. Because that brings me to an important point that Judge Hogan didn't touch on, but that we certainly preserve for your honors to hear. Before I get to that, though, if I can add a little bit to what Mr. Altman said about the statute of limitations on the underlying loan. The name of the case escapes me. I think it may be Woods. But the type of loan was such that once the loan was accelerated, then all of the remaining payments became due. And essentially, each payment carries with it its own statute of limitations. So you have to choose whether to continue to allow this loan to remain delinquent and you kind of chip away at how many payments are remaining. Or you can choose to accelerate the whole thing and seek the entire outstanding balance. And that's what made the underlying collection lawsuit timely. This is important because I'm an attorney and I'm up here talking about it. Mitchell Rubenstein is an attorney. He and his associates looked at this account and decided under statutes of limitations governing this type of lawsuit whether or not it was timely. The only person in this lawsuit who has been claiming that there was something faulty with the underlying lawsuit, whether it was untimely, whether it never should have been filed in the first place, whether there was probable cause, whether this was an appropriate assignment, is Sharon Michaels, who by her own admission is not an attorney. In this lawsuit, she is a consumer. And under the FDCPA, we treat consumers as though they are all the hypothetical least sophisticated consumer, which other circuit courts of appeals have determined would fall around the sixth grade reading and comprehension level. So we're really talking about a very low bar for very high protection of consumers. This is an important aspect of the FDCPA. But when we're talking about a licensed attorney's exercise of the profession of law for which he holds a license issued by the District of Columbia that gives him the permission to come before your honors and practice law, then I think and I would argue to the court that Judge Hogan also could have granted summary judgment in Mitchell Rubenstein's favor. Because we have no expert testimony to talk about what the standard of care governing his conduct was, what he did wrong, how he deviated from that standard of care, and what he should have done. And I submit to your honors that without that, there are aspects of the FDCPA that are applicable to attorneys in the practice of law, for sure, that would not require expert testimony, just like a malpractice claim. This is not one of those. If your honors have any questions, I'm happy to. Nope. Thank you, Ms. Burnett. Thank you. And I think that I offered Ms. Dennis a minute for rebuttal. If you if you'd like it, you need to take it if you don't want to. Thank you, Your Honor. First, I want to state that PSI has already admitted that the loan was accelerated before they actually received the loan. And it was in as of March 1st, I believe, in their payment history, the loan was already in default. So as far as like the payments that were made, the loan was already in default and that statute of limitations had already ran. So there was no late acceleration referred to by Rubenstein, by my colleague from Mr. Rubenstein and Associates. Also, there is no affidavits or anything in the record proving PSI subservicer status. Rubenstein MRA admits that that TSI was his client. He had no dealings whatsoever with a national collegiate. Transworld in its own also with respect to J.H. Marshall. J.H. Marshall states that advised creditors says the unauthorized practice of law for creditors when they to advise for a debt collector to advise creditors when to bring suit, solicit or receive assignments of claims or debts for collection, which contemplates or authorize the enforcement of collection by suit brought in the name of either party by the attorney at law. So either the creditor or the debt collector. It doesn't matter which name it's in. It's still the unauthorized practice of law. J.H. Marshall is not the only, we are not the only jurisdiction that actually holds this. Ms. Michaels cites several in her briefing with respect to that. All right. Thank you, Ms. Dennis. Thank you. The case is submitted. Thank you. Thank you all.
judges: Pillard, Katsas, Rao